(No. 56596.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LESLIE BROWN, Appellee.

*Opinion filed October 21, 1983.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael B. Weinstein, Assistant Attorney General, and Richard A. Devine, Michael E. Shabat, Michelle Grimaldi, Mary A. McKenzie, Joan S. Cherry, and Paula Carsentsen, Assistant State's Attorneys, all of Chicago, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Defendant, Leslie Brown, was charged by complaint with violating section 4—102(a)(4) of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1981, ch. 95½, par. 4—102(a)(4)) for possessing an automobile with a removed and falsified vehicle identification number (VIN). Pursuant to defendant's motion, the circuit court of Cook County dismissed the complaint on the ground that section 4—102(a)(4) violates due process and equal protection of the law under both the United States and Illinois constitutions (U.S. Const., amend. XIV, sec 1; Ill. Const. 1970, art. I, sec. 2). The State brought this direct appeal

as a matter of right pursuant to Supreme Court Rule 603. 73 Ill. 2d R. 603.

The single question we address here is: Did the trial court err in finding section 4—102(a)(4) unconstitutional?

The complaint charged defendant with committing the offense of "False Manufactors [*sic*] Identification Number in that he possessed a motor vehicle, to wit: 72 Chev. 2 dr. Blue Ill QE5613 (no vin) on which the manufactors identification [*sic*] number had been removed and falsified and said Leslie Brown had no knowledge that said number had been falsified."

Section 4—102 provides in pertinent part:

"(a) It is a violation of this Chapter for:

\* \* \*

(4) A Person to buy, receive, *possess,* sell or dispose of a vehicle or any component part of a vehicle if the manufacturer's identification number thereon has been removed or falsified, and *such person has no knowledge* that the number is removed or falsified;

\* \* \*

(b) Sentence. A person convicted of a violation of this Section shall be guilty of a Class A misdemeanor." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 95½, pars. 4—102(a)(4), (b).)

Conviction of a Class A misdemeanor is punishable by imprisonment for any term less than one year. Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—3(a)(1).

Defendant admits the legislature has the authority to create absolute-liability offenses (see Ill. Rev. Stat. 1981, ch. 38, par. 4—9) but maintains this authority is subject to constitutional limitations (*Smith v. California* (1959), 361 U.S. 147, 4 L. Ed. 2d 205, 80 S. Ct. 215; *Lambert v. California* (1957), 355 U.S. 225, 2 L. Ed. 2d 228, 78 S. Ct. 240; *United States v. Marvin* (8th Cir. 1982), 687 F.2d 1221). He argues it is arbitrary and unreasonable to impose a duty to inspect and verify the VIN on a mere possessor of a motor vehicle. It is his contention that "[t]he statute simply goes too far. Had it been limited to buyers,

sellers, owners, *etc.*, the instant case could never have been initiated." He claims section 4—102(a)(4) as applied to him violates due process of law, and is unconstitutional on its face. For this proposition he cites *Bionic Auto Parts & Sales, Inc. v. Fahner* (N.D. Ill. 1981), 518 F. Supp. 582, 586-87.

In *Bionic,* the plaintiffs challenged the validity of section 5—401(e) of the Code (Ill. Rev. Stat. 1979, ch. 95½, par. 5—401(e)) and Rule 5—401A promulgated thereunder by the Illinois Secretary of State. Section 5—401(e) provided for warrantless searches of businesses licensed to deal in used auto parts. It left the authority to make these searches to the discretion of enforcement officers and did not define regular enforcement procedures. The court held this section failed to meet the standards for administrative searches established in *Donovan v. Dewey* (1981), 452 U.S. 594, 69 L. Ed. 2d 262, 101 S. Ct. 2534, and was invalid under the fourth amendment.

The court also discussed the relationship between section 4—102(a)(4) of the Code and Rule 5—401A. Paragraph 1(G) of the rule required licensees like the plaintiffs to record whether any serial number or other identifying mark of the manufacturer had been altered, defaced or removed. The court emphasized that under section 4—102(a)(4), the plaintiffs could be held responsible even if they did *not* know the identification number on an auto part had been removed or falsified. In the court's view, this section, in not requiring knowledge, was an obvious drafting error. The court also expressed its doubt concerning the constitutionality of the statute as drafted. However, it indicated that as long as section 4—102(a)(4) remained in the Code, the record-keeping requirement of Rule 5—401A, which would force a licensee to prove his own violation of section 4—102(a)(4), clearly would pose fifth amendment problems. On this basis, the court held that paragraph 1(G) of Rule 5—401A was invalid.

Defendant's reliance in the instant case on *Bionic* is misplaced. There, the court was not required to decide the validity of section 4—102(a)(4). In expressing its doubt over the section's constitutionality, the court overlooked the fact that the legislature can create offenses not requiring *scienter*. Moreover, the court's conclusion that there was a drafting error made in the promulgation of section 4—102(a)(4) is not supported by a close analysis of Illinois law. We find the legislature expressly desired to remove knowledge as an element of the offense. (Compare Ill. Rev. Stat. 1981, ch. 95½, par. 4—102(a)(4), with Ill. Rev. Stat. 1957, ch. 95½, par. 4—102(h).) In addition, an early vehicle code provision similar to section 4—102(a)(4) was silent on the *scienter* element and the court held knowledge was not required under either the Federal or Illinois constitutions. *People v. Billardello* (1925), 319 Ill. 124. See *People v. Johnson* (1919), 288 Ill. 442; *People v. Fernow* (1919), 286 Ill. 627.

Section 4—102(a)(4) specifically and clearly provides that a person commits the offense even though he has no knowledge the VIN is removed or falsified. Indeed, if he has such knowledge he commits a felony. See Ill. Rev. Stat. 1981, ch. 95½, pars. 4—103(a)(4), (b).

The other cases defendant cites which place constitutional limitations on the police power are inapposite to the instant case. *Smith* involved an absolute-liability statute which prohibited book sellers from possessing obscene books in their stores. The court held this statute was invalid because it conflicted with the constitutional rights of free speech and freedom of the press. No such rights are involved in the instant case.

*Lambert* involved a municipal ordinance requiring convicted felons to register with the police whenever they were going to be in the city for more than five days. In holding this ordinance unconstitutional, the court said there was no valid purpose under the police powers for the law

other than merely enabling law-enforcement officials to compile a list of names and addresses of convicted felons. In *Marvin,* the statute at issue contained a knowledge requirement. Thus, the court concluded Congress did not intend to create an absolute-liability statute.

We find the instant case more analogous to a line of cases which have upheld statutes promoting public safety. For example, in *United States v. Freed* (1971), 401 U.S. 601, 28 L. Ed. 2d 356, 91 S. Ct. 1112, the defendant was indicted for possession of and conspiracy to possess unregistered hand grenades in violation of the National Firearms Act (26 U.S.C. sec. 5861(d) (Supp. V 1964)). One of the arguments the court addressed was the contention that the indictment failed because it did not allege the defendant's *scienter.* The court said the law, although silent on the requirement of *scienter,* was a regulatory measure in the interest of public safety. As such, it did not require specific intent or knowledge by the defendant that the hand grenades were unregistered. See also *United States v. Dotterweich* (1943), 320 U.S. 277, 88 L. Ed. 48, 64 S. Ct. 134; *United States v. Balint* (1922), 258 U.S. 250, 66 L. Ed. 604, 42 S. Ct. 301.

The statute involved in the instant case similarly falls in the category of regulatory measures designed to promote the public welfare and safety. Section 4—102(a)(4) was enacted as part of a general statutory scheme entitled "Anti-theft Laws." The broad purpose of this scheme "is to protect automobile owners against theft and to protect the general public against the commission of crimes involving stolen automobiles. (*People v. Billardello* (1925), 319 Ill. 124, 125-26.)" (*People v. One 1979 Pontiac Grand Prix Automobile* (1982), 89 Ill. 2d 506, 510.) We referred to section 4—102(a)(4) in *One 1979 Pontiac Grand Prix Automobile* and noted that this statute "making it an offense to have possession of an automobile bearing an altered, defaced or destroyed identification number has been upheld

as a valid exercise of the police power. [Citations.]" 89 Ill. 2d 506, 511.

In determining the constitutionality of such statutes, this court has said:

> "To constitute a legitimate exercise of the police power, [the] legislative enactment must bear a reasonable relationship to the public interest intended to be protected, and the means adopted must be a reasonable method of accomplishing the desired objective. [Citations.] Once the legislature determines that a problem exists and acts to protect and promote the general welfare of its citizens, the legislation is presumed to be a valid exercise of the State's police power. [Citation.] Furthermore, the due process clauses of the State and Federal constitutions, insofar as they operate to limit the exercise of the State's police power, prohibit only its arbitrary or unreasonable use." *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453.

Section 4—102(a)(4) requires every owner or possessor of a motor vehicle to determine whether the vehicle's VIN has been removed or falsified. Through this section, the legislature has intended to curtail motor vehicle thefts as well as "chop shop" and "retag" operations. It has placed the burden of determining the authenticity of the VIN on possessors as well as owners and sellers in an attempt to inhibit both the profitability of the illegal stolen car market and the ease with which stolen automobiles and their parts are sold.

In its opinion, placing liability on owners, sellers, and buyers alone would not adequately address the problem. It also found it necessary and important to dissuade possessors of vehicles from participating in these illegal activities. In doing so, the legislature has made the determination that preventing the above-stated evils outweighs the possible injustice of imposing criminal penalties against a mere possessor of a vehicle having a falsified or removed VIN. Given the steady rise in stolen motor vehicles and their parts and the multitude of problems related thereto (see

Pub. Act 82—984, 1982 Ill. Laws 2467), we do not believe this provision is an arbitrary or unreasonable use of the police power. See *People v. Billardello* (1925), 319 Ill. 124; *People v. Johnson* (1919), 288 Ill. 442.

We find what was said in *Johnson* regarding a similar due process and equal protection argument applicable here:

> "It is contended by plaintiff in error that one might be guilty under this act by having a car in his possession from which the numbers had been removed without his knowledge. The constitution does not require that *scienter* be a necessary element of any law where an offense is *malum prohibitum*. One may violate the law without any intent on his part to do so. [Citations.] Various statutes of this State punishing the doing of acts without requiring allegation or proof of criminal intent upon the part of the doer have been upheld on the ground that they were a valid exercise of the police power. [Citations.] *** Laws can not be held invalid merely because some innocent person may possibly suffer. The principle of police regulation is, 'the greatest good to the greatest number.' " 288 Ill. 442, 445-46.

The State also asks this court to grant it costs, including $50 for this appeal and $25 for its participation in the oral argument. Such fees are "taxed as costs to be collected from the defendant, if possible, *upon conviction.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 53, par. 8.) Moreover, an offender is to pay the costs of prosecution "[w]hen [he] is *convicted* of an offense under any statute." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 38, par. 180—3.) Since defendant has not been convicted in this case, the State's request at this stage of the proceedings is premature.

For the reasons stated, the order of the circuit court dismissing the complaint is reversed and the cause is remanded to that court for further proceedings.

*Reversed and remanded.*