THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAN GRAMO, a/k/a Jan Bocian, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAN BOCIAN, a/k/a Stanislaw Piontek, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAN BOCIAN, Defendant-Appellant.

Fourth District   Nos. 4—91—0851, 4—91—0861, 4—91—0862 cons.

Argued March 24, 1993.—Opinion filed November 15, 1993.

Michael J. Costello (argued), of Springfield, and Joshua Sachs, of Chicago, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In the fall of 1990, the State charged defendant Jan Gramo, a/k/a Jan Bocian, a/k/a Stanislaw Piontek, in De Witt, Livingston, and McLean Counties with multiple counts of attempt (residential burglary), residential burglary (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 19—3), obstruction of justice (Ill. Rev. Stat. 1989, ch. 38, par. 31—4(a)), theft (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(4)(A)), and possession of burglary tools (Ill. Rev. Stat. 1989, ch. 38, par. 19—2). The cases from all three counties were consolidated for a bench trial in McLean County. The trial court convicted defendant of residential burglary, attempt (residential burglary), and obstruction of justice and sentenced him to extended-term consecutive sentences totalling 55 years in prison. The court entered no sentences or judgments of conviction on the other counts charging theft and possession of burglary tools. A timely post-trial motion and motion for reduction of sentence were filed and denied.

Defendant appeals, arguing that the trial court (1) erred by imposing extended-term sentences for residential burglary where the victim

is over the age of 60, and (2) abused its discretion by imposing such a severe sentence.

We affirm.

## I. BACKGROUND

John Allen, a City of Clinton (De Witt County) police officer, testified that he was home on October 16, 1990, at about 5 p.m. when he saw a gray, four-door Buick automobile, with a white man at the wheel and a white woman inside, circle the block at least five times. The woman, dressed in a long skirt and blouse, left the car, ran to three different houses and attempted to open the front doors as if she was trying to get in. The woman held her arms in front of her body as though "she was carrying something." At the third house, the residence of Leita Jackson, the woman approached the side door, tried to turn the handle, and then twice threw her body against the door. Allen then telephoned the police department to report this incident and the license plate number of the gray car.

After making his call, Allen went outside carrying his police radio. He testified that he saw the woman moving around the outside of the Jackson house until she went out of his view. He went to the Jackson residence, checked the door that the woman had attempted to enter, and found it still locked. Allen then went to the back of the house in the same direction the woman had gone and found the back door open. Allen testified that he did not see the woman in the house, but after he checked the back door, he went back to the front of the house and observed the gray vehicle headed down the street. At that time, Allen saw police chief Michael Norrington's squad car coming down the street. Allen advised him over the radio that he had just passed the suspects' vehicle. Norrington then turned around to pursue the gray vehicle. Allen went back to the Jackson house and found the front door, which had been previously locked, open. He checked the other nearby houses while the police pursued the Buick.

When Allen went to the Clinton police station shortly afterward, he saw the two suspects sitting in separate interview rooms. Defendant was the male suspect. Allen helped to inventory the property, which consisted mostly of jewelry, that had been confiscated from defendant's impounded automobile. Norrington found various other items during his inventory of defendant's automobile, including screwdrivers, a ball peen hammer, wire cutters, a small magnifying lens (called a jeweler's glass), a hand-held magnifying glass, metal snips, a cold steel chisel, a "booster skirt" (an apron with an inside compart-

ment), a wire stripper, and a bag with a false bottom. Norrington found jewelry in the false bottom of the bag.

Norrington testified that the tools looked as if they had been used, but he could not say for what purpose. He testified that the "double walled bag" was a relatively standard item, but a "booster skirt," on the other hand, must be specially made. Norrington testified that such a skirt is used for stealing, particularly for concealing bulky items in shoplifting. An appraisal estimated the total value of all the items recovered from defendant's car at $25,810.

Norrington testified that after Allen reported the suspicious activity, he drove to the scene in an unmarked car and another officer drove to the scene in a marked squad car. As Norrington approached Allen's residence, he saw a car matching the description Allen provided, and at the same time, Allen called on the radio that he had just passed the suspicious vehicle. Norrington then looked through his rearview mirror and saw a woman enter the gray Buick, the door slam shut, and the car speed away. Norrington made a U-turn, activated his emergency lights, and gave pursuit.

Norrington pulled the gray Buick over after a high-speed chase. He found two people in the car, a man driving and a woman passenger. When Norrington asked for identification, both the driver and passenger responded, "No speak English." (Norrington identified the driver in court as defendant and the woman passenger as defendant's wife, Ewa Bzoza.) The driver produced an Illinois driver's license bearing the name "Jan Gramo," and the passenger produced a card with the name "Ela Burak." Norrington placed them under arrest and ordered the Buick towed to the police impoundment lot.

Leita Jackson was 87 years old at the time she testified, approximately two years after the burglary. On October 16, 1990, she lived alone and left home shortly after 5 p.m. She gave no one permission to enter her home in her absence, and she did not know either defendant or his wife. When she left her home that day, all of her doors were locked.

After defendant and his wife were arrested, the police issued a bulletin announcing the recovery of a large amount of jewelry and inviting inquiries regarding missing jewelry from other police agencies. They received the following responses.

Earl Ewald was 81 years old and a longtime resident of McLean County when he testified at trial. His wife, Mildred, was 82 years old. On the morning of October 16, 1990, Earl and Mildred went shopping. Mildred wore her wedding ring, which she did not normally wear during the daytime. When they returned home she took off her ring and

put it on top of the jewelry box on her dresser. Later, at 2 p.m., the Ewalds went outside to wash the windows on the front of their house. They left the front and back doors unlocked while they were outside. The next morning, Mildred could not find her wedding ring. As she searched, she discovered that other jewelry was also missing, along with her watch and some money ($117). The house bore no signs of forced entry. The Ewalds immediately notified the police. After the Ewalds learned of the recovery of a quantity of jewelry in Clinton, they went to the Clinton police department, where they identified some of the items missing from their house, including Mildred's wedding ring.

Another resident of McLean County, Fern Caton, was 78 years old when she testified. On the morning of October 15, 1990, she ran an errand, wearing four rings which she always wears when she goes out. For most of the next day, October 16, Caton left her kitchen door unlocked. She spent the day downstairs and part of it outside with a building contractor, who was working on her house. She last saw her rings on the morning of October 15 and did not see them again until October 19, when she identified them at the Clinton police station.

Elmer Kohrt lives with his wife Gladys in Livingston County. He was 67 and she was 66 years old at the time of the trial. Neither was home during the day on October 16, 1990. On October 19, Kohrt and his wife realized that his watch and some money were missing from his dresser drawer. They also discovered various items of jewelry missing from other places in their home. Kohrt reported the missing items to the police, and on October 22, he identified several of the missing items at the Clinton police station.

The State also presented evidence regarding defendant's activities in Kankakee County. Mary Irene Monik testified that on October 13, 1990, she saw a gray car with a male driver and female passenger drive through her neighborhood in Kankakee County. Monik testified that she observed defendant's wife try the front door of a neighbor's house, go around to the side of the house, and, shortly afterward, come out of the front door and walk to the gray car.

Orville Estill, born in 1919, and his wife, Cleo, were neighbors of Mary Monik. On the afternoon of October 13, 1990, they were doing yard work in the backyard of a next door neighbor. They had only a partial view of their house, where they had left their side door unlocked. The front door facing the street was out of their view. Orville testified that Mary Monik and another neighbor come to their home to report that they had seen somebody leaving through their front door. The Estills inspected their residence and found approximately

$400 in currency and some rings missing. These items were never recovered.

Immediately after arguments of counsel, the trial court concluded that the State had proved every count of every charge beyond a reasonable doubt. The court entered judgments of conviction against defendant and his wife on the six residential burglary charges, the two attempt (residential burglary) charges, and the obstructing justice charges. The court did not enter judgments on the counts of theft or possession of burglary tools.

At post-trial proceedings and sentencing, the court confirmed the entry of judgment on two counts of residential burglary in the McLean County cases (the Caton and Ewald residences) and dismissed two counts of theft. As to the De Witt County cases, the court confirmed the judgment of conviction against defendant on one count of attempt (residential burglary) (the Jackson residence) and one count of obstruction of justice, but declined to enter judgment on the remaining counts of theft and possession of burglary tools. As to the Livingston County cases, the court confirmed the judgment of conviction against defendant on one count of residential burglary (the Kohrt residence) and declined to enter judgment as to theft count.

At defendant's sentencing hearing, Illinois State Police agents Lex Bitner and Renee Cibich testified for the State. Bitner had served since May 1987 as a criminal intelligence analyst for the State Police division of criminal investigation. Her duties included analyzing specific types of crime patterns across the State and assisting local police agencies in disseminating information and identifying suspects. In this capacity, she was involved in the investigation of defendant and his wife. She testified to a pattern of residential burglaries in central Illinois with what she considered a similar mode of operation—daytime, nonforceable entries into the homes of elderly people with jewelry and money taken without ransacking the house. Bitner opined that the burglaries were not random entries; instead, the choice of elderly victims was part of the method of operation.

Cibich, also employed by the division of criminal investigation, intelligence section, described the manner in which she used fingerprints to obtain through Interpol records of defendant's criminal record in Poland, Germany, Sweden, and Canada. Defendant also had a prior conviction for aggravated assault in McHenry County, Illinois.

The presentence report stated that defendant had 28 prior felony convictions from all over the world, but defendant denied the accuracy of that figure. At the sentencing hearing, the trial court singled out convictions from Sweden, Canada, and McHenry County, Illinois,

that it would consider in sentencing defendant. The court noted in mitigation that defendant did not use violence or weapons in committing these crimes. However, the court also noted that these crimes involved entry into the victims' homes, and the items stolen were of considerable financial and emotional value to the victims. The court found the defendant and his wife to be "extremely sophisticated thieves."

The trial court sentenced defendant to 25 years in prison for the Livingston County residential burglary conviction and to two, 30-year terms for the McLean County residential burglary convictions. The court ordered these McLean County sentences to run concurrently with each other but consecutively to the Livingston County sentence. The court also sentenced defendant to concurrent terms of 10 years and 6 years in prison for the De Witt County attempt (residential burglary) and obstructing justice convictions, and the court ordered these sentences to run concurrently with the McLean County sentences. The consecutive prison terms for the five convictions require that defendant serve 55 years in prison. The court sentenced defendant's wife to a total of 60 years in prison.

## II. Analysis

### A. Statutory Eligibility for Extended-Term Sentences

Defendant first argues that section 5—5—3.2(b)(4)(ii) of the Unified Code of Corrections (Code) did not authorize the trial court to impose extended-term sentences. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(4)(ii).) Residential burglary, the most serious offense of which he was convicted, is a Class 1 felony. (Ill. Rev. Stat. 1989, ch. 38, par. 19—3(b).) The sentencing range for a Class 1 felony was from a minimum of 4 to a maximum of 15 years in prison. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(4).) An extended-term sentence for a Class 1 felony, where allowed by law, carried a minimum prison term of 15 years and a maximum of 30 years. Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—2(a)(3).

Defendant notes that the trial court clearly and explicitly sentenced him to an extended-term sentence on every count of residential burglary pursuant to section 5—5—3.2(b)(4)(ii) of the Code, which applies to offenses committed against a person of the age of 60 years or older. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(4)(ii).) At the time of defendant's offenses, that section read as follows:

"(b) The following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender:

\* \* \*

(4) When a defendant is convicted of any felony committed against:

\*\*\*

(ii) a person 60 years of age or older at the time of the offense." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(4)(ii).)

The amended form of this statute (see Pub. Act 86—1418, §2, eff. January 1, 1991 (1990 Ill. Laws 3189, 3191)), which took effect January 1, 1991, reads as follows:

"(b) the following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender:

\* \* \*

(4) When a defendant is convicted of any felony committed against:

\*\*\*

(ii) a. person 60 years of age or older at the time of the offense *or such person's property.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.2(b)(4)(ii).

Defendant argues that the statute authorizing an extended term based upon the victim's age of 60 or over did not apply to property crimes until January 1, 1991. Because the offenses in this case were all committed on or before October 16, 1990, defendant claims that the amended version of the statute, authorizing an extended-term sentence for crimes against a person 60 years of age or older at the time of the offense *or such person's property,* did not apply. He argues that the trial court's imposition of an extended-term sentence pursuant to this amended statute violated his right not to be punished under an *ex post facto* law, as guaranteed by article I, sections 10 and 16 of the Illinois Constitution (Ill. Const. 1970, art. I, §§10, 16), and the fifth, eighth, and fourteenth amendments to the United States Constitution (U.S. Const., amends. V, VIII, XIV).

■ The State responds that the trial court could properly sentence defendant to an extended term for residential burglary against a person 60 years or older under the law in effect *prior* to January 1, 1991. We agree. That statute provided that when a defendant is convicted of "any felony" committed against a person 60 years of age or older, the defendant is subject to an extended-term sentence. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(4)(ii).) We conclude that

the legislature meant precisely what it said in using the phrase "any felony," and did not intend to limit the type of felony which would subject a defendant to an extended term.

In *People v. Anderson* (1985), 142 Ill. App. 3d 240, 242, 488 N.E.2d 557, 558, the court expressly held that the extended-term provision based on the age of the victims applies to residential burglary. The court in *Anderson* noted the legislative determination that felonies against the elderly warranted more severe punishment because such victims are least able to protect themselves and most traumatized by the commission of the felonies. *Anderson*, 142 Ill. App. 3d at 242, 448 N.E.2d at 558.

The addition or omission of words in a statute does not necessarily indicate legislative intent to change the effect of the earlier statute. A change in statutory construction is appropriate only where the intent of the legislature to change the law is clear or the language of the new statute plainly requires it. (*People v. Nunn* (1979), 77 Ill. 2d 243, 249, 396 N.E.2d 27, 29-30, quoting *Vause & Striegel, Inc. v. McKibbin* (1942), 379 Ill. 169, 175, 39 N.E.2d 1006, 1009.) Courts may interpret a statutory amendment to indicate a legislative intent to *clarify* the law rather than *change* it. The amendment may also be viewed as the expression of the legislature's intent regarding the original statute. (See *O'Connor v. A & P Enterprises* (1980), 81 Ill. 2d 260, 271-72, 408 N.E.2d 204, 209; *Hession v. Illinois Department of Public Aid* (1989), 129 Ill. 2d 535, 543, 544 N.E.2d 751, 755 ("While it is true that normally an amendment is presumed to change the law as it formerly existed, the circumstances surrounding the enactment of an amendment must also be considered. [Citation.] If the circumstances suggest that the legislature intended to interpret the original statute, the presumption of change is rebutted").) We view the amendment to section 5—5—3.2(b)(4)(ii) of the Code as the legislature's intent to codify the holding in *Anderson*, once the legislature became aware of the very argument defendant makes here and that the court in *Anderson* rejected so that other appellate court panels would not be permitted to reach contrary conclusions.

We conclude that the addition of "or such person's property" to the statute constitutes a reaffirmation of the legislature's intent to include *all* felonies. Because section 5—5—3.2(b)(4)(ii) of the Code applied to property offenses at the time of the offense, the trial court did not apply an *ex post facto* law. Accordingly, we reject defendant's argument that the court erred as a matter of law by sentencing defendant to extended terms.

*B. Defendant's Claimed Lack of Knowledge of Victims' Age*

■ Next, defendant maintains that his extended-term sentences were improper because the record contains no evidence that he had knowledge, or any way of knowing, the age of the victims. Defendant contends that his method of operation, as described at trial, indicated that he randomly chose the residences he burglarized. Defendant concludes that the trial court erred by imposing extended terms in this case because doing so makes double punishment hinge upon happenstance and random chance. We emphatically disagree.

The legislature has the authority to classify and define criminal offenses and to determine the extent and nature of punishment for their commission. (See *People v. Harmison* (1985), 108 Ill. 2d 197, 205, 483 N.E.2d 508, 512; *People v. La Pointe* (1981), 88 Ill. 2d 482, 500, 431 N.E.2d 344, 352.) This authority is limited by the requirement that the classification of a crime and the penalty provided be reasonably related or designed to remedy the evils the legislature deems a threat to public health, safety, and general welfare. *People v. P.H.* (1991), 145 Ill. 2d 209, 233, 582 N.E.2d 700, 711; see *Harmison*, 108 Ill. 2d at 205, 483 N.E.2d at 512.

The legislature has determined that individuals over a certain age are entitled to greater protection simply based upon their age because they are least able to protect themselves and most traumatized by the offenses. (*People v. Jackson* (1991), 216 Ill. App. 3d 1, 10, 574 N.E.2d 719, 725; *Anderson*, 142 Ill. App. 3d at 242, 488 N.E.2d at 558.) Making any felony committed against the elderly subject to an extended-term is rationally related to the goal of protecting this class of individuals from criminal conduct. Further, the trial court may use this aggravating factor to impose an extended-term sentence even if the record shows that defendant did not know the victim's age, and even if the victim is not the target of defendant's criminal conduct. (See *People v. Benkowski* (1991), 215 Ill. App. 3d 615, 621, 575 N.E.2d 587, 591 (extended term based on age applicable without regard to effect the victim's age had on defendant's decision to commit the offenses).) We note that no constitutional prohibition exists against a criminal provision because it lacks a *scienter* or knowledge requirement. (*People v. Brown* (1983), 98 Ill. 2d 374, 378-79, 457 N.E.2d 6, 7-8.) Requiring proof of defendant's knowledge of the victim's age would nullify much of the protection the legislature intended because a person's age may not be readily ascertainable. (See *People v. Jordan* (1981), 102 Ill. App. 3d 1136, 1139, 430 N.E.2d 389, 391.) The

terrible impact of crimes upon the elderly remains the same regardless of whether the criminal knew the victim's age.

We wish to emphasize that we have absolutely no sympathy for defendant's complaint that he is being unjustly punished because he did not (and could not) have known the ages of his victims. Criminals must take their victims as they find them, infirmities and all. Once the legislature has determined that certain conduct is criminal, it need not require the State to prove a defendant's knowledge of a particular victim's infirmity before the criminal may suffer additional punishment because of that infirmity. (See *People v. Martin* (1983), 112 Ill. App. 3d 486, 499, 445 N.E.2d 795, 806 (defendants properly convicted of murder for beating victim with preexisting heart disease, thereby putting strain on his heart and causing his death, even though a victim without that heart disease would not have been killed by defendants' beating).) To be blunt, the answer to defendant's contention is for him not to commit a felony in the first place; then he need not worry about the possible application of unknown (he claims) aggravating factors that might increase his sentence.

### C. Consecutive Sentences for Residential Burglary

■ Next, defendant argues that the trial court abused its discretion by imposing consecutive sentences on the residential burglary convictions. A court may not impose consecutive sentences when the offenses are part of a single course of conduct during which no substantial change in the nature of the criminal objective occurs (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a)), but may impose them when, in light of the nature and circumstances of the offense and history and character of the defendant, the court determines that they are required to protect the public. Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(b).

Here, defendant burglarized several different residences in three different counties. Accordingly, the trial court could properly find that this was not a single course of conduct. See *People v. Shaw* (1985), 133 Ill. App. 3d 391, 405, 478 N.E.2d 1142, 1154.

Furthermore, this 55-year-old defendant has an extensive criminal record in Illinois and foreign countries. We also note that the trial court found defendant to be an "extremely sophisticated" thief. In sentencing defendant, the court specifically mentioned the following: (1) the illegality of defendant's entry into Canada and the United States; (2) the multiple victims in widely separate locations in three different counties; (3) the emotional distress Caton suffered as a result of defendant's crimes; (4) defendant's sophistication as a thief;

and (5) defendant's significant prior criminal history in Illinois and throughout the world. Thus, the court could easily (and appropriately) conclude that consecutive terms were required to protect the public, especially the elderly, from further criminal conduct by defendant. (See *People v. Rivera* (1991), 212 Ill. App. 3d 519, 526-27, 571 N.E.2d 202, 207; *People v. Cohen* (1986), 142 Ill. App. 3d 900, 905-06, 492 N.E.2d 569, 573-74.) We believe that the trial court would have been fully justified in so concluding because the record convincingly demonstrates that defendant is an inveterate criminal utterly devoid of any rehabilitative potential. We reaffirm what this court recently wrote about criminals who prey on the elderly:

> "If our elderly citizens are to be protected from con artists like this defendant, harsh sentences ought to be imposed upon criminals who prey upon the elderly. By imposing such sentences, the courts may deter similar crimes from being committed." (*People v. Lambert* (1990), 195 Ill. App. 3d 314, 332, 552 N.E.2d 300, 312.)

We add that defendant's miserable record of criminality suggests that our elderly citizens are safe from him only when he is secured behind bars. Whatever else may be said of putting him in prison (perhaps even for the rest of his life), this much cannot be disputed: when he is *there*, he can no longer be out on the streets committing his crimes *here*.

### D. *Trial Court's Consideration of Inherent Conduct*

Defendant next argues that the trial court erred when it considered in aggravation conduct which is not only inherent in the definition of burglary, but which the legislature already considered in the creation of the enhanced offense of residential burglary. Defendant points to the following remarks of the court:

> "With regard to the charge of residential burglary, clearly the most serious charge and there being three of those charges which have been proven by the State against this defendant, that is a most serious criminal offense because it is entering into the residence, which is perhaps the most protected place of any citizen in the United States and has been recognized as such by the United States Supreme Court. Particularly those parties' bedrooms."

Defendant argues that the trial court improperly considered the entry into the privacy of the victims' dwellings as an aggravating factor.

We agree with defendant that conduct which is an essential element of an offense cannot be used to enhance the punishment for that

offense. (See *People v. Conover* (1981), 84 Ill. 2d 400, 404-05, 419 N.E.2d 906, 909; *People v. Gardner* (1982), 105 Ill. App. 3d 103, 118, 433 N.E.2d 1318, 1328.) However, we do not find the trial court's reference here to defendant's entry into the homes and bedrooms of the victims improper. In imposing sentence, the trial court may consider the nature and circumstances of the offense. (See *People v. Tolliver* (1981), 98 Ill. App. 3d 116, 117-18, 424 N.E.2d 44, 45.) The court was merely describing the nature of the offenses defendant committed and the seriousness with which the legislature, the courts, and society view them. (See *Martin*, 112 Ill. App. 3d at 503, 445 N.E.2d at 809, quoting *People v. Barney* (1982), 111 Ill. App. 3d 669, 679, 444 N.E.2d 518, 525 ("It is unrealistic to suggest that the judge sentencing a convicted murderer must avoid mentioning the fact that someone has died or risk committing reversible error").) The trial court did not rely on the fact that defendant entered into the homes as grounds for imposing a more severe sentence.

Even if we viewed the trial court's reference to the entry into the home as improper, we would deem any such error as harmless in light of the overwhelming presence of aggravating factors. See *People v. Bourke* (1983), 96 Ill. 2d 327, 332, 449 N.E.2d 1338, 1340 ("where it can be determined from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required").

### E. *Trial Court's Alleged Failure To Consider Mitigating Factors*

▮ Defendant also maintains that the trial court erred by failing to give any weight to the substantial factors in mitigation present (he claims) in this record. Defendant points out that he did not carry a weapon and that he entered the victims' homes in such a way as to ensure that they were empty. Thus, he claims that his conduct neither caused nor threatened physical harm and that he did not contemplate that his conduct would cause or threaten physical harm. See Ill. Rev. Stat. 1989, ch. 38, pars. 1005—5—3.1(a)(1), (a)(2).

At sentencing, the trial court noted that these offenses did not involve "violence" and defendant was not "armed." Defendant argues that although the court acknowledged these mitigating factors, it failed to give them any weight in imposing sentence.

On review, this court presumes the trial court to have considered evidence offered in mitigation unless some statement in the record, other than the sentence imposed, indicates that the court did not do so. (*People v. White* (1992), 237 Ill. App. 3d 967, 970, 605 N.E.2d 720, 722; *People v. Fugitt* (1980), 87 Ill. App. 3d 1044, 1046, 409 N.E.2d

537, 539.) Further, this court will not disturb the trial court's decision merely because we might have balanced the mitigating and aggravating factors differently. See *People v. Steppan* (1985), 105 Ill. 2d 310, 323, 473 N.E.2d 1300, 1307.

We reject defendant's claim that the trial court failed to consider the mitigating factors he cites. The record reveals that the court in fact did consider those factors; defendant just does not like the results.

## F. *Excessiveness of Defendant's Sentence*

■ Last, defendant claims that the sentence imposed constitutes an abuse of discretion because it was excessive in light of the evidence. This court will not substitute its judgment or preference as to punishment for that of the sentencing court, which is always better situated than we to tailor a sentence to the circumstances of the case. The trial court balances the appropriate factors in imposing sentence, and this court will not second-guess the trial court's judgment unless the record affirmatively shows the trial court abused its sentencing discretion. *Steppan*, 105 Ill. 2d at 323, 473 N.E.2d at 1307.

We earlier made clear our approval of the sentences the trial court imposed when we discussed and rejected defendant's argument that the trial court erred by imposing consecutive sentences. We reaffirm that approval in light of the evidence before the trial court, consisting not only of defendant's lengthy criminal record, but also that all the victims were over the age of 60. The trial court did not abuse its discretion in sentencing defendant.

### III. CONCLUSION

For the reasons stated, we affirm the sentence imposed by the circuit court of McLean County.

Affirmed.

McCULLOUGH and LUND, JJ., concur.