Jan BOCIAN, also known as Jan Gramo,
Petitioner–Appellant,

v.

Salvador GODINEZ, Warden,
Respondent–Appellee.

No. 95–3664.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1996.

Decided Nov. 21, 1996.

Patrick J. Calihan (argued), Chicago, IL, for Petitioner-Appellant.

Arleen Anderson, Steven Zick, Robert K. Villa (argued), Office of the Attorney General, Chicago, IL, for Respondent-Appellee.

Before BAUER, FLAUM, and MANION, Circuit Judges.

BAUER, Circuit Judge.

Petitioner-appellant Jan Bocian ("Bocian") currently is serving consecutive extended-term prison sentences totaling 55 years after being convicted of multiple counts of residential burglary and related offenses. The Illinois Appellate Court affirmed the sentences in *People v. Gramo*, 251 Ill.App.3d 958, 191 Ill.Dec. 336, 623 N.E.2d 926 (1993), *appeal denied*, 155 Ill.2d 569, 198 Ill.Dec. 547, 633 N.E.2d 9 (1994). Bocian now appeals from a judgment of the district court denying his 28 U.S.C. § 2254 petition for a writ of habeas corpus. We affirm.

**Background**

Bocian's petition does not challenge the Illinois Appellate Court's statement of facts. Those facts are entitled to a presumption of correctness, and we adopt them here. 28 U.S.C. § 2254(e)(1); *Kines v. Godinez*, 7 F.3d 674, 677 (7th Cir.1993), *cert. denied*, 510 U.S. 1200, 114 S.Ct. 1314, 127 L.Ed.2d 664 (1994).

On October 16, 1990, a City of Clinton police officer witnessed Bocian, accompanied by his wife, Ewa Bzoza ("Bzoza"), driving around a residential block several times. The vehicle eventually stopped, whereupon Bzoza ran out to several houses and attempted to open the front doors. After telephoning the police department to report this incident, the officer saw Bzoza move around the outside of Leita Jackson's home. The officer went to the back of Jackson's house, found the back door open, but did not find Bzoza inside. Bzoza had re-entered Bocian's vehicle, which took off.

Another police officer then pursued the vehicle on a high-speed chase. That officer stopped the vehicle and placed Bocian and Bzoza under arrest. During the inventory of Bocian's vehicle, officers found tools, wire cutters, a jeweler's magnifying glass, metal snips, a steel chisel, a "booster skirt" (an apron with an inside compartment), and a bag with a false bottom containing jewelry. An appraisal estimated the total value of all the items recovered from Bocian's vehicle at $25,810.

After Bocian's and Bzoza's arrests, the Clinton police issued a bulletin announcing the recovery of a large amount of jewelry and inviting inquiries regarding missing jewelry. The bulletin drew several responses. Earl Ewald, 81 years old, and his wife, Mildred, 82 years old, identified several of the items, including Mildred's wedding ring. The Ewalds noticed the jewelry missing on October 17, 1990, having last seen it the previous morning. Fern Caton, 78 years old, identified four rings, which she had last seen on the morning of October 15, 1990. Elmer Kohrt, 67 years old, and his wife Gladys, 66 years old, also identified several pieces of the inventoried jewelry. The Kohrts were not at home on October 16, 1990, and noticed the jewelry missing on October 19, 1990.

Bocian and Bzoza were tried together and convicted of several counts of residential burglary and related offenses. At Bocian's sentencing hearing, the trial court considered previous convictions from McHenry County, Illinois, Sweden, and Canada. The court noted that while Bocian did not use violence or weapons, the crimes he committed nonetheless involved entering the victims' homes and taking items of considerable financial and emotional value. The court described both Bocian and Bzoza as "extremely sophisticated thieves." The court sentenced Bocian to two consecutive prison terms, totaling 55 years, pursuant to section 5–5–3.2(b)(4)(ii) of the Unified Code of Corrections. At the time of Bocian's offenses, the relevant section of the sentencing statute read as follows:

(b) The following factors may be considered by the court as reasons to impose an extended term sentence under Section 5–8–2 upon any offender:

\* \* \* \* \* \*

(4) When a defendant is convicted of any felony committed against:

\* \* \* \* \* \*

(ii) a person 60 years of age or older at the time of the offense.

Ill.Rev.Stat.1989, ch. 38, para. 1005–5–3.2(b)(4)(ii) (current version at 730 ILL. COMP. STAT. 5/5–5–3.2(b)(4)(ii) (West 1992)). This statute was subsequently amended, effective January 1, 1991. At the time of Bocian's sentencing hearing, the statute read:

> (b) The following factors may be considered by the court as reasons to impose an extended term sentence under Section 5–8–2 upon any offender:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (4) When a defendant is convicted of any felony committed against:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (ii) a person 60 years of age or older at the time of the offense *or such person's property.*

Ill.Rev.Stat.1991, ch. 38, para. 1005–5–3.2(b)(4)(ii) (current version at 730 ILL. COMP. STAT. 5/5–5–3.2(b)(4)(ii) (West 1992)) (emphasis added). Bocian currently is serving his sentence in Statesville Correctional Center, Joliet, Illinois.

Bocian appealed his sentence to the Illinois Appellate Court, arguing that: (1) the imposition of an extended-term sentence pursuant to the amended statute violated his right not to be punished under an ex post facto law, as guaranteed by the United States and Illinois Constitutions; (2) the extended-term sentence was improper because Bocian was not aware of the property owners' ages; and (3) the extended-term sentence was unwarranted and grossly and excessively severe. The Illinois Appellate Court affirmed Bocian's sentence. *People v. Gramo,* 251 Ill.App.3d 958, 191 Ill.Dec. 336, 623 N.E.2d 926 (1993). Bocian's leave to appeal to the Illinois Supreme Court was denied. *People v. Gramo,* 155 Ill.2d 569, 198 Ill.Dec. 547, 633 N.E.2d 9 (1994).

Bocian filed a petition for a writ of habeas corpus in federal district court, arguing that: (1) the sentencing statute, before it was amended, was unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment; (2) the Illinois courts' interpretation that the 1991 amendment merely clari-

fied, rather than changed, the previous sentencing statute violated his due process rights; and (3) an extended-term sentence for all offenses committed against property owned by persons 60 years or older amounted to cruel and unusual punishment under the Eighth Amendment. The district court denied the petition. *United States ex rel. Bocian v. Godinez,* No. 94 C 6147, 1995 WL 549020 (N.D.Ill. Sept. 12, 1995). Bocian raises the same three issues on appeal to this Court. We agree with the district court that Bocian is not entitled to habeas relief, and therefore affirm the denial of his petition.

## Analysis

■ Federal courts may grant a writ of habeas corpus when a person is held in custody under a state court judgment in violation of the United States Constitution. 28 U.S.C. § 2254; *Kavanagh v. Berge,* 73 F.3d 733, 735 (7th Cir.1996). With respect to the district court's denial of habeas relief, we review the district court's findings of fact under a clearly erroneous standard and its legal conclusions *de novo. Neumann v. Jordan,* 84 F.3d 985, 987 (7th Cir.1996).

■ Before a federal court will consider a petition for a writ of habeas corpus on its merit, the petitioner must (1) exhaust all remedies available in state courts (28 U.S.C. § 2254(b)(1)(A)), and (2) fairly present any federal claims in state court first, or risk procedural default (*Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Verdin v. O'Leary,* 972 F.2d 1467, 1472–73 (7th Cir.1992)). Respondent concedes that Bocian has exhausted his state remedies. Respondent contends, however, that Bocian failed to fairly present his constitutional claims in state court. We agree with Respondent to the extent that one of Bocian's three arguments to this Court was not fairly presented to the Illinois courts. Specifically, we glean from the record that Bocian fairly presented his ex post facto and Eighth Amendment claims to the Illinois courts, and those claims are properly before this Court. Bocian failed, however, to fairly present his void for vagueness argument to the Illinois courts, and thus he is procedurally barred from raising the argument here.

*Fair Presentment*

█ "A habeas petitioner must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court." *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450, 453 (7th Cir.1984) (citations omitted). To this end, a habeas petitioner must present his claims in such a way as to "fairly alert the state court to any applicable [federal] constitutional grounds for the claim." *Green v. Peters*, 36 F.3d 602, 605 (7th Cir.1994) (quoting *Sullivan*, 731 F.2d at 453), *cert. denied*, —— U.S. ——, 115 S.Ct. 1703, 131 L.Ed.2d 565 (1995)). This means that both the operative facts and the controlling legal principles of a constitutional claim must be submitted to the state court. *Verdin*, 972 F.2d at 1474 (citing *Picard*, 404 U.S. at 277, 92 S.Ct. at 513). To determine whether a habeas petitioner has fairly presented a federal claim in state court, we follow the framework articulated in *Verdin:*

> If the petitioner's argument to the state court did not: (1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation, then this court will not consider the state courts to have had a fair opportunity to consider the claim. However, the presence of any one of these factors, particularly factors (1) and (2), does not automatically avoid a waiver; the court must consider the specific facts of each case.

972 F.2d at 1473–74 (quoting *Daye v. Attorney General of New York*, 696 F.2d 186, 194 (2d Cir.1982) (en banc)).

█ In his brief to this Court, Bocian first alleges that the sentencing statute in effect at the time of his offenses was unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment. He contends that the statute failed to define the prohibited conduct with sufficient definiteness and failed to provide adequate notice that the Illinois courts would apply the sentence en-

hancements to him. The essence of Bocian's argument is that the statutory language "*any felony* committed against ... *a person* 60 years of age or older" is so ambiguous that an ordinary person could not reasonably understand that he or she could receive an enhanced sentence for committing a felony against the *property* of a person 60 years or older.

To show that this constitutional claim was first presented to the Illinois courts, Bocian directs our attention to his brief to the Illinois Appellate Court. He asserts that therein he cited Supreme Court caselaw, alleged violation of his Fourteenth Amendment rights, and "articulated the concept of the void for vagueness doctrine while not reciting those exact words." This simply does not constitute fair presentment. The *Verdin* test requires more particularity as to the nature of the constitutional claim. While we have never required a petitioner to cite "book and verse of the federal constitution" to the state courts, the state court must be provided the opportunity to "adjudicate squarely th[e] federal issue." *Verdin*, 972 F.2d at 1474 (citations omitted). We have stressed repeatedly that "what is important is that the *substance* of the federal claim be presented fairly." *Id.*

We have carefully reviewed Bocian's brief to the Illinois Appellate Court and cannot conclude that the state court would have been fairly alerted to the substance of Bocian's vagueness claim in order to "adjudicate squarely" that specific due process issue. What we do find in Bocian's brief to the Illinois Appellate Court is a single reference to the Fourteenth Amendment and the citation of one Supreme Court case, *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Bocian cited *Furman* to support the contention that committing a crime against a person over the age of 60 is an improper basis for imposing an extended-term sentence for a crime against property where there is no evidence that the defendant was aware of the age of the owner. Bocian did not cite *Furman* to illustrate the same "controlling legal principle" that he has submitted to this Court. As the district court noted, and we repeat, counsel must sketch an argument explaining *why* the con-

viction violates the Due Process Clause. It is not our place to conjecture that Bocian desired the Illinois Appellate Court to address a constitutional claim different from that which Bocian specifically articulated in his brief. It is apparent that Bocian's vagueness argument is an afterthought, and as such, we need not indulge it.

 Bocian next alleges that the imposition of an extended-term sentence amounted to an ex post facto application of the amended sentencing statute in violation of the Fourteenth Amendment. We find that Bocian fairly presented this claim to the state courts. Throughout his appeals process, Bocian has consistently cited the Supreme Court case, *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), for the proposition that the United States Constitution prohibits legislatures from retroactively altering the definition of crimes or increasing the punishment for criminal acts. In his brief to the Illinois Appellate Court, Bocian also cited Illinois cases that relied on United States Supreme Court cases for ex post facto analysis. Altogether, the articulation of the ex post facto argument framed in terms of constitutional analysis, the references to pertinent federal cases, and the citation of Illinois cases employing federal caselaw indicate that the state courts were apprised of the constitutional nature of Bocian's ex post facto claim.

 Finally, Bocian alleges that the imposition of an extended-term sentence amounted to cruel and unusual punishment in violation of the Eighth Amendment. The federal component of this "severe sentence" argument was not as conspicuous as the ex post facto claim in Bocian's brief to the Illinois Appellate Court, but neither was it as notably absent as the void for vagueness claim. Bocian did not expressly allege that the imposition of an extended-term sentence violated his rights under the Eighth Amendment. Rather, Bocian framed the argument in terms of Illinois state law. In his Illinois Appellate Court brief, he cited only to Illinois cases, most of which failed to address any constitutional issues. However, this, in itself, will not defeat a finding of fair presentment. "[W]hen the cited cases articulate only state

law principles and available federal precedent has been omitted from the presentation, . . . the habeas court must determine whether, as a *pragmatic* matter, it is probable that the state tribunal was alerted to the federal quality of the claim." *Verdin,* 972 F.2d at 1475–76. A pragmatic assessment of the case leads us to conclude that Bocian effectively relayed to the Illinois Appellate Court the substance of his legal argument such that the court could have addressed the "severe sentence" claim in terms of federal law.

In his brief to the Illinois Appellate Court, Bocian alleged that the state trial court abused its sentencing discretion by imposing consecutive extended-term sentences. One of the numerous bases for this allegation was that the "sentences as a whole were of grossly excessive severity." While Bocian failed to include the constitutional buzz-words "cruel and unusual punishment" or "Eighth Amendment" in his brief to the Illinois Appellate Court, he otherwise peppered the brief with catch-phrases which would tend to raise a constitutional red flag and call to mind the Eighth Amendment's prohibition against cruel and unusual punishment. Bocian characterized the extended-term sentences as "staggeringly severe," he repeatedly referred to the "extreme severity" of the sentences, and he criticized the state trial court for its "imposition of sentences far more severe than warranted." Moreover, in the opening section of his brief, Bocian cited the Eighth Amendment in support of his argument that the sentence he received violated his constitutional rights. He also contended that the sentence was disproportionate to the crime committed, thus making it unconstitutional. Finally, we note that Bocian's brief cited the Illinois Supreme Court case *People v. Brownell,* 79 Ill.2d 508, 38 Ill.Dec. 757, 404 N.E.2d 181 (1980), in which the defendant claimed that the death penalty violated his Eighth Amendment rights. In sum, we find that the operative facts and controlling legal principles were present in Bocian's brief to the Illinois Appellate Court, such that he "assert[ed] the claim in terms so particular as to call to mind a specific constitutional right," thus satisfying the *Verdin* test. *Verdin,* 972 F.2d at 1473–74. Having

concluded that Bocian fairly presented his ex post facto and Eighth Amendment claims to the Illinois state courts, we now turn to the merits of those claims.

*Habeas Review*

Initially, we note the standard under which we will review Bocian's habeas petition. On April 24, 1996, while Bocian's appeal to this Court was pending, President Clinton signed the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214. Section 104(3) of the 1996 Act adds to the existing habeas statute a new § 2254(d), which prescribes the treatment federal courts are to accord legal determinations by state courts:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the· merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ·

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Whether this amendment applies to pending cases and if so, how it affects them, are issues we addressed recently in *Lindh v. Murphy,* 96 F.3d 856 (7th Cir.1996). We answered the first question in the affirmative. The 1996 Act may be applied when the crime or state court decision preceded April 24, 1996. *See id.* at 861–68.

In construing the language of § 2254(d)(1), we found most significant that Congress has limited the source of doctrine on which we may rely in addressing a habeas petition. Federal courts are no longer permitted to apply their own jurisprudence, but must look exclusively to Supreme Court caselaw. *See id.* at 869 ("The new § 2254(d)(1) ... explicitly identifies only the Supreme Court as the font of 'clearly established' rules."). A petitioner now "must be able to point to an authoritative decision of the Supreme Court in order to secure a writ." *Id.* We further found that the two clauses of § 2254(d)(1) mandate two separate analyses. To secure a writ, a petitioner must show that the state court's decision was contrary to clearly established caselaw by the Supreme Court, or alternatively, that the state court's decision was an unreasonable application of Supreme Court caselaw. *Id.* at 869–70. Because Bocian can show neither, we must deny his habeas application.

1. Ex Post Facto Claim

Article I, § 10 of the United States Constitution provides that no state shall pass any ex post facto law. The United States Supreme Court has interpreted the Ex Post Facto Clause as prohibiting legislatures from "retroactively alter[ing] the definition of crimes or increas[ing] the punishment for criminal acts." *Collins v. Youngblood,* 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990).

Bocian argued to the Illinois Appellate Court that the imposition of an extended-term sentence for burglaries committed before the sentencing statute was amended in 1991 amounted to an ex post facto application of the amended statute in violation of the Fourteenth Amendment. Respondent countered that Bocian was already subject to an extended-term sentence for the residential burglaries prior to the 1991 amendment, since the statute in effect in October 1990 authorized such sentences for defendants convicted of "any felony" against persons 60 years of age or older. The legally correct question, contemplated by the Illinois Appellate Court, was whether Bocian was convicted under a statute different from the one that was in effect at the time he committed the crimes in issue. The court concurred with Respondent, reasoning that "the legislature meant precisely what it said in using the phrase 'any felony,' and did not intend to limit the type of felony which would subject a defendant to an extended term.... [T]he addition of 'or such person's property' to the statute constitutes a reaffirmation of the legislature's intent to include *all* felonies." *Gramo,* 251 Ill.App.3d at 967, 191 Ill.Dec. at 342–

43, 623 N.E.2d at 932–33. Logic therefore dictated the conclusion that there could be no ex post facto application of the amended statute in violation of the Fourteenth Amendment.

For Bocian's ex post facto claim to succeed in this Court under the framework of § 2254(d)(1), there must be a Supreme Court case showing that the Illinois courts' construction of the sentencing statute was unconstitutional. In other words, a Supreme Court case must compel an interpretation of the 1991 amendment as a change in, rather than a clarification of, the meaning of the sentencing statute that was in effect when Bocian committed the relevant crimes. Bocian has not brought to our attention, nor have we found, such a case. Simply, the Illinois Appellate Court's analysis of the ex post facto claim cannot be "contrary to" or "an unreasonable application of" a case that does not exist.[1] Therefore, we are unable to grant Bocian's petition on the basis of his ex post facto claim.

### 2. Eighth Amendment Claim

 Bocian's last shot at obtaining a writ from this Court is to establish that the Illinois Appellate Court's adjudication of his Eighth Amendment claim falls within the terms of § 2254(d)(1). Bocian argues to this Court that the sentence he received was grossly excessive and violative of the prohibitions against cruel and unusual punishments under the Eighth Amendment. Specifically, Bocian argues: (1) that a 55–year term given to a 66–year–old man for burglaries, particularly where the proceeds were recovered, is an irregular and uncustomary sentence, and (2) that it was arbitrary and capricious for the trial court to sentence Bocian under a statute that was void for vagueness or pursuant to· an amended statute applied ex post facto. Bocian's arguments to the Illinois Appellate Court were of the same substantive

nature. That court held that in light of Bocian's lengthy criminal record, the trial court did not abuse its discretion in sentencing Bocian to consecutive extended terms of imprisonment. The court commented: "[T]he trial court would have been fully justified in so concluding [that consecutive terms were required to protect the public, especially the elderly, from further criminal conduct by defendant] because the record convincingly demonstrates that defendant is an inveterate criminal utterly devoid of any rehabilitative potential." *Gramo*, 251 Ill.App.3d at 970, 191 Ill.Dec. at 344–45, 623 N.E.2d at 934–35.

We find that we are prohibited from issuing a writ on the basis of Bocian's Eighth Amendment · claim, as Bocian has failed to demonstrate either prong of § 2254(d)(1). The leading Supreme Court case on the Eighth Amendment's prohibition against cruel and unusual punishment is *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). In that case, two justices declared that "the Eighth Amendment contains no proportionality guarantee." *Id.* at 965, 111 S.Ct. ·at 2686. Rather, a sentencing provision violates the Constitution only if it authorizes a form of punishment that is, in itself, especially cruel or not regularly employed. *Id.* at 976, 111 S.Ct. at 2691. The other three justices forming the majority stated that "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 1001, 111 S.Ct. at 2705 (quoting *Solem v. Helm*, 463 U.S. 277, 288, 303, 103 S.Ct. 3001, 3008, 3016–17, 77 L.Ed.2d 637 (1983)). As the district court in Bocian's case observed, *Harmelin* suggests that state legislatures have great leeway in determining appropriate punishments for specific crimes. *See id.*

---

**1.** Moreover, as we explained in *Lindh*, "By posing the question whether the state court's treatment was 'unreasonable,' § 2254(d)(1) requires federal courts to take into account the care with which the state court considered the subject. . . . [A] responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment." *Lindh*, 96 F.3d at 871. Although we need not discuss further the unrea-

sonableness prong of § 2254(d)(1), given the absence of a relevant Supreme Court case, we note that the Illinois Appellate Court dedicated nearly three full pages of its opinion to addressing the merits of Bocian's ex post facto claim, and after fully exploring relevant caselaw and legislative history, it reached a "responsible, thoughtful answer."

at 988, 111 S.Ct. at 2698 (Scalia, J.) (discussing petitioner's life sentence for possession of cocaine and observing: "The members of the Michigan legislature, and not we, know the situation of the streets of Detroit."); *id.* at 999, 111 S.Ct. at 2703 (Kennedy, J.) (stating that " '[r]eviewing courts ... should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes.' ") (quoting *Solem,* 463 U.S. at 290, 103 S.Ct. at 3009).

We find no Supreme Court authority indicating that a 55–year sentence for multiple burglaries committed against elderly persons is especially cruel or not regularly employed. Moreover, the Illinois Appellate Court refused to substitute its judgment or preference as to punishment for that of the sentencing court. *Gramo,* 251 Ill.App.3d at 972, 191 Ill.Dec. at 346, 623 N.E.2d at 936. In doing so, the Illinois Appellate Court was acting in conformity with *Harmelin.* Thus, the imposition and affirmance of a 55–year prison term for burglaries was not contrary to, nor an unreasonable application of, *Harmelin.* "Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense." *Harmelin,* 501 U.S. at 994, 111 S.Ct. at 2701.

Finally, we cannot accept Bocian's argument that the trial court sentenced him arbitrarily and capriciously. Having failed to show that the sentencing statute in effect in October 1990 was void for vagueness or that the statute as amended was applied ex post facto, Bocian cannot sustain his argument that it was an abuse of discretion to sentence him under a valid sentencing statute.

### Conclusion

For the foregoing reasons, the district court's judgment denying the petition for a writ of habeas corpus is

AFFIRMED.