**Robert DAVIS, Petitioner,**

v.

**Sally B. JOHNSON, et al., Respondents.**

**No. 97–CV–0030A.**

United States District Court, W.D. New York.

March 22, 1999.

---

Robert S. Davis, Warsaw, NY, pro se.

Guy C. Giancarlo, Asst. Atty. Gen., Buffalo, NY, for Respondents.

### ORDER

ARCARA, District Judge.

The above-referenced case was referred to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1)(B), on April 8, 1997. On February 17, 1999, Magistrate Judge Heckman filed a Report and Recommendation, recommending that the petition for habeas corpus relief be denied and the case dismissed.

The Court has carefully reviewed the Report and Recommendation, the record in this case, and the pleadings and materials submitted by the parties. No objections having been timely filed, it is hereby

ORDERED, that pursuant to 28 U.S.C. § 636(b)(1), and for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, the petition for habeas corpus relief is denied and the case is dismissed in its entirety.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This petition for habeas corpus relief has been referred to the undersigned by Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1)(B), for all proceedings necessary to a determination of the factual and legal issues presented. For the reasons that follow, the petition should be denied.

### *STANDARD OF REVIEW*

■ The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this case because petitioner filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Since the AEDPA was passed, "[f]ederal courts are no longer permitted to apply their own jurisprudence [when reviewing a petition for a writ of habeas corpus filed by a state prisoner], but must look exclusively to Supreme Court caselaw," *Bocian v. Godinez,* 101 F.3d 465, 471 (7th Cir.1996). Thus, a district court cannot grant habeas relief on the basis of its view of how the Supreme court might decide a particular issue, *id.* at 472, but instead it must either determine whether the state court decision is contrary to the Supreme Court's decisions, *see*

*O'Brien v. Dubois*, 145 F.3d 16, 20–21 (1st Cir.1998), or, if the Supreme Court has not addressed the issue, "whether the state Court's use of (or failure to use) existing law in deciding the petitioner's claim involved an 'unreasonable application' of Supreme Court precedent." *Id.* Thus, a district court must determine "whether a state judge could reasonably read Supreme Court precedent as permitting the result of which [petitioner] now complains." *Mata v. Johnson*, 99 F.3d 1261, 1268 (5th Cir.1996). "[A] 'reasonable' decision by the state court must be honored," *Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir.1996) (the AEDPA amendments "tell[ ] the federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called 'unreasonable' "), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Thus, the applicable standard for reasonableness is whether the [state Court] determination is at least minimally consistent with the facts and circumstances of the case, *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir.1997). In making this determination, the district court may refer to decisions of "inferior federal courts [that] have decided factually similar cases [to] assess[ ] the reasonableness *vel non* of the state court's treatment of the contested issues." *O'Brien*, 145 F.3d at 25.

In addition, under the AEDPA, a federal court may not grant a writ of habeas corpus with respect to any claim that was rejected on the merits by a state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary· to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (as amended). Furthermore, state court factual determinations must be presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### BACKGROUND

On January 18, 1991, petitioner was indicted[1] by a Genesee County Grand Jury for third degree criminal sale of cocaine (N.Y.Penal Law § 220.39(1)[2]) and third degree criminal possession of cocaine (N.Y.Penal Law § 220.16(1)[3]) arising from petitioner's sale of a substance containing cocaine in the Village of Batavia, New York on July 26, 1990. Ex. A.[4] Plaintiff was also indicted by the ·Grand Jury for third degree criminal sale of cocaine (N.Y.Penal Law § 220.39(1)), third degree criminal possession of cocaine (N.Y.Penal Law § 220.16(1)), and third degree criminal possession of cocaine (N.Y.Penal Law § 220.16(12)[5]) arising from petitioner's sale of a substance containing· cocaine in the Town of Pavilion, New York on August 15, 1990. *Id.*

---

**1.** This indictment was indictment number 3359.

**2.** N.Y.Penal Law § 220.39(1) provides:

> A person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells:
> 1. a narcotic drug.

**3.** N.Y.Penal Law § 220.16(1) provides:

> A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possess:
> 1. a narcotic drug with intent to sell it.

**4.** Ex. ___ refers to the Exhibits to Answer received by the Court on April 4, 1997.

**5.** N.Y.Penal Law § 220.16(12) provides:

> A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses:
> 12. one or more preparations, compounds, mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more.

On April 4, 1991, petitioner was re-indicted[6] by a Genesee County Grand Jury for the same events. Ex. B. This indictment charged petitioner with third degree criminal sale of cocaine (N.Y.Penal Law § 220.39(1)), third degree criminal possession of cocaine (N.Y.Penal Law § 220.16(1)), *and* seventh degree criminal possession of cocaine (N.Y.Penal Law § 220.16(1)[7]) arising from the events of July 26, 1990. It also charged petitioner with *second* degree criminal sale of cocaine (N.Y.Penal Law § 220.41(1)[8]), third degree criminal possession of cocaine (N.Y.Penal Law § 220.16(1)), and third degree criminal possession of cocaine (N.Y.Penal Law § 220.16(12)) for the events of August 15, 1990. *Id.*

Petitioner was represented in the resultant criminal proceedings by Gary A. Horton, Esq., the Genesee County Public Defender. On July 18, 1991, petitioner pleaded guilty in Genesee County Court to a single count of second degree criminal sale of a controlled substance, an A–II felony (N.Y.Penal Law § 220.41(1)), Ex. C–12, in full satisfaction of the six-count Indictment 3359–A, Ex. C–2, thus sparing petitioner from a potential consecutive sentence for a separate B felony, Ex. C–5,

P–2. On August 29, 1991, petitioner was sentenced to an indeterminate period of incarceration incarceration with a maximum being life imprisonment and the minimum being three years (N.Y.Penal Law §§ 70.00(2)(a)[9] and (3)(a)(ii)[10]). Ex. D.

Petitioner did not immediately file a notice of appeal from his plea and sentence; instead, on August 29, 1991, petitioner signed a Notice of Right to Appeal form presented to him by his criminal defense attorney, on which he indicated that he did not want to appeal his sentence. Ex. H–3. Petitioner thereafter changed his mind, however, and on September 25, 1991, Horton received a letter from petitioner's mother informing Horton that her son wanted to file a Notice of Appeal after all. Ex. H–2, 4. On October 3, 1991, Horton filed the Notice of Appeal on behalf of petitioner, Ex. H–5, and sent petitioner the paperwork he would need for appealing *in forma pauperis*, Ex. H–6–10. Petitioner did not perfect his appeal.

Nearly two years later, on August 3, 1993, petitioner filed with the New York State Supreme Court, Appellate Division, Fourth Department, a request pursuant to N.Y. Criminal Procedure Law § 460.30[11]

---

6. This indictment, number 3359–A, was intended to supercede and replace the indictment (number 3359) which issued on January 18, 1991. *See* Ex. C–2.

7. N.Y.Penal Law § 220.16(1) provides:

A person is guilty of criminal possession of a controlled substance in the seventh degree when he knowingly and unlawfully possess a controlled substance.

8. N.Y.Penal Law § 220.41(1) provides:

A person is guilty of criminal sale of a controlled substance in the second degree when he knowingly and unlawfully sells: 1. One or more preparations, compounds, mixtures or substances containing a narcotic drug and the preparations, compounds, mixtures or substances are of an aggregate weight of one-half ounce or more.

9. N.Y.Penal Law § 70.00 establishes that "a sentence of conviction for a felony shall be an indeterminate sentence." Sub-section (2) provides that the "maximum term for an in-

determinate sentence shall be at least three years," and, (a) "[f]or a class A felony, the term shall be life imprisonment."

10. N.Y.Penal Law § 70.00(3) provides that the "minimum period of imprisonment under an indeterminate sentence shall be at least one year," and (a) that "[i]n the case of a class A felony, the minimum period shall be fixed by the court and specified in the sentence." Sub-section (ii) provides that "[f]or a class A–II felony, such minimum period shall not be less than three years nor more than eight years four months."

11. N.Y. Criminal Procedure Law § 460.30 provides in part:

1. Upon motion to an intermediate appellate Court of a defendant who desires to take an appeal to such Court from a judgment, sentence or order of a criminal Court but has failed to file a notice of appeal, an application for leave to appeal, or, as the case may be, an affidavit of errors, with

for an extension of time to appeal from his sentence on the ground that his attorney had failed to file his Notice of Appeal in a timely manner. Ex. G. By order dated October 1, 1993, petitioner's request was denied on the ground that his § 460.30 motion was untimely. Ex. J.

On May 11, 1994, petitioner filed a motion to vacate his judgment and set aside his sentence pursuant to N.Y. Criminal Procedure Law § 440, in which he raised several claims of prosecutorial misconduct and denial of effective assistance of counsel. Ex. N. After reviewing the record, including the sentencing minutes, and the "largely conclusory, self-serving and unsubstantiated" allegations made by petitioner in support of his motion, Ex. P–2, the state court found that there was no support for petitioner's claims that the prosecution or police tampered with the evidence or that petitioner was not effectively represented by counsel in reaching the "advantageous plea agreement." *Id.* Petitioner's § 440 motion was summarily denied. Ex. Q, R. Petitioner did not seek leave to appeal from this determination.

On August 5, 1996, petitioner sought leave to appeal to the New York State Court of Appeals from the Appellate Division's denial of his request for an extension of time to appeal from his plea and sentence, Ex. K, and by order dated August 20, 1996, leave to appeal was denied on the ground that the Appellate Division order denying the request was not an appealable order, Ex. M.

In this petition for habeas corpus relief, petitioner asserts:

1. His plea was involuntary because his defense counsel lied to him, and he and his family were threatened by the state and county police;

2. He was denied his Sixth Amendment right to effective assistance of counsel, in that his attorney misled him about the charges and pressured him to plead guilty, and both misled him about his appeal rights and failed to file his Notice of Appeal in time; and

3. He was denied fundamental fairness in the proceedings by the combined and concerted efforts of the police, district attorney and his defense counsel.

Respondent's answer to the petition raises three affirmative defenses:

1. By his knowing and voluntary entry of a plea of guilty to one count of the indictment, petitioner waived any objection to the alleged ineffective counsel, entrapment, and conspiracy against him;

2. Petitioner has failed to exhaust his state Court remedies; and

3. Petitioner has failed to state a cause of action under 28 U.S.C. § 2241 et seq.

## DISCUSSION

### A. Exhaustion of State Court Remedies

Plaintiff never appealed from his plea and sentence, and thus his state court remedies have not been exhausted. However, because "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(2), and because this Court recommends that the petition should be denied on the merits, the Court will not address the exhaustion issue further.

### B. The Pre–Plea–and–Sentence Claims

Petitioner's claims fall into two categories: those which concern matters which

such criminal Court within the prescribed period ... such intermediate appellate Court ... may order that the time for the taking of such appeal ... be extended to a date not more than thirty days subsequent

to the determination of such motion.... Such motion must be made with due diligence after the time for the taking of such appeal has expired, and in any case not more than one year thereafter.

occurred before he entered his plea and was sentenced, and those which occurred after he was sentenced. Petitioner argues that he was denied effective assistance of counsel prior to his plea and sentence, in that his attorney allegedly lied to him, misled him about the charges, pressured him to plead guilty, and engaged in a concerted effort with the police and prosecution to convict him. Plaintiff also claims that he and his family were threatened and that he was denied fundamental fairness by the combined and concerted efforts of the police, prosecution and his defense counsel.

■ None of petitioner's pre-plea-and-sentence claims support a grant of habeas corpus relief because they are barred by the ruling of the United States Supreme Court in *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), and subsequent case law. In *Tollett*, the Supreme Court ruled that when "a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* at 267, 93 S.Ct. 1602. The issue after a defendant pleads guilty is "not the merits of these claims as such, but rather whether the guilty plea had been made intelligently and voluntarily with the advice of competent counsel." *Id.* at 265, 93 S.Ct. 1602. Later, the Supreme Court explained its rationale for this determination:

> A counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do

not stand in the way of conviction if factual guilt is validly established.

*Menna v. New York*, 423 U.S. 61, n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam).

■ Here, petitioner was questioned by the Court at length and in considerable detail during his plea allocution and he both expressly denied that he was forced into agreeing to the plea by anyone and waived any claims of entrapment or agency. He also expressly denied to the Court any continuing concern regarding his attorney's representation of him in the pre-plea stage of the proceedings and he specifically admitted guilt to the A–II felony count on which he was subsequently sentenced.

Q: Now, is [accepting a plea to one class A–II felony if the Court is willing to limit the sentence to nothing greater than three years to life] what you want to do?

A. Yeah.

Q. Okay. Is anyone forcing you into it, making you do it against your own free will?

A. No.

Q. Have you had enough time to discuss it with your attorney Mr. Horton?

A. Yeah.

Q. Do you have confidence in his judgment?

A. Yeah.

Q. Has anything else been promised to you other than the one count and the minimum sentence?

A. No.

Q. All right, and do you understand by pleading guilty you'll waive your right to a jury trial, has that been explained to you?

A. Yeah.

Q. Normally you have a right to make the people prove your guilt beyond a reasonable doubt to the unanimous satisfaction of twelve jurors. If they can't do it, you must be acquitted or be found

guilty of such lesser crimes as they can convince twelve jurors and even perhaps get out of the mandatory sentencing scheme, but make the people produce witnesses and evidence at this trial where you can see it, cross examine witnesses, you can contest evidence through motions or objections. You can tell your side to the jury by testifying yourself or subpoenaing witnesses. You can raise defenses called entrapment or agency which if established or not established, disproved, could cause you to be found not guilty of these charges. Has all that been explained to you?

A. Yeah.

Q. So now if you plead guilty, you're going to waive all that, you're never going to know what will happen at a jury trial and based simply on your plea of guilty, you will end up being convicted of a class A–2 felony, now do you understand that?

A. Yeah.

Q. And are you willing to waive all that and to allow that to happen?

A. Yeah.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Now, are you willing to tell me then on the fifteenth day of August in the Town of Pavilion at a residence at the intersection of Perry and Dillon Roads you did sell a substance, compound or mixture containing the one-half ounce or more or just more than a half ounce?

Mr. Horton: I believe the statute reads one-half ounce or more, Your Honor.

Q. Which had one-half ounce or more and contained cocaine?

A. Yeah.

Q. In other words you knew the quantity of the substance you had was an ounce of more, a half-ounce or more, it had cocaine in it, and that you unlawfully sold it to another person.

A. Yeah.

Q. Any issue as to agency or entrapment?

Mr. Horton: Your Honor, I've reviewed those defenses with Mr. Davis. There are conceivable issues with Mr. Davis' case. I believe there's a similar situation where conceivably those issues could be raised. I discussed with him my perception of how they could be raised at trial and whether or not could successfully raise them.

Q. Okay, but you have gone over the issue of agency and entrapment?

Mr. Horton: I have.

Q. Mr. Horton has explained to you what agency means, in other words if you were only an intermediary, you could not be convicted of this offense and you would have a right to make the people prove at the trial to the jury's satisfaction that you weren't just an agent, that you were in fact selling it for your own benefit or purpose?

A. Yeah.

Q. And if you plead guilty, you waive that right as well?

A. Yeah.

Q. There is an affirmative defense of entrapment I explained that to you, because of the police actions the criminal intent arose based on them rather than your own initiative, that's an affirmative offense of course you would have to prove that by a fair preponderance of the evidence, but again that is something you can litigate at a jury trial and have a jury decide that you perhaps are not guilty based on the defense of entrapment?

A. Yeah.

Q. By pleading guilty you will waive that as well?

A. Yeah.

Q. Are you willing to do that?

A. Yeah.

Q. Did you write me a letter on July 8, 1991?

A. Yeah.

Q. Is that your letter?

A. Yeah.

\*   \*   \*   \*   \*   \*

Q. ... All right, do you think you've had enough time now to go over with Mr. Horton so you know what your options are?

A. Yeah.

Q. And do you feel that Mr. Horton's competently representing you, any reason why you think he's not competently representing you?

A. No.

Q. Or he's not representing you or telling you what the law is or what your chances are?

A. No.

Q. I am prepared to accept the plea, counsel.

\*   \*   \*   \*   \*   \*

Q. All right, Mr. Davis, I am going to ask you then how you plead to the fourth count of the indictment charging you with criminal sale of a controlled substance second degree in full satisfaction of it, guilty or not guilty?

A. Guilty.

Ex. C.

At the petitioner's sentencing some six weeks later, his attorney stated on the record in his presence and without objection from petitioner:

Mr. Horton: I have also specifically today discussed with Mr. Davis whether he seeks to withdraw his plea on any basis, that basis [the fact that shock incarceration is not assured] or his earlier letter to the court or any comments made within the presentence investigation. He indicates to me he does not.

Following some discussion of the shock incarceration issue with the Court, petitioner then affirmed his plea:

Q. If you don't withdraw your plea now, later on you can come back and withdraw it if you aren't received [in shock incarceration].

A. I never said that.

Q. You don't want to withdraw your plea?

A. No.

\*   \*   \*   \*   \*   \*

Q. Mr Davis, anything you want to tell me yourself?

A. No.

\*   \*   \*   \*   \*   \*

The Clerk: Mr. Davis, do you have any legal reason, any legal cause whatsoever why you should not be sentenced this morning?

A. No.

Ex. D.

The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In making the assessment, the court should consider all of the relevant circumstances, including the possibility of a heavier sentence following a guilty verdict after trial, the defendant's previous contact with the criminal justice system, and whether the court addressed the defendant and explained his options. *Magee v. Romano*, 799 F.Supp. 296, 300 (E.D.N.Y.1992). Here, petitioner, who was charged with six felony counts, faced the possibility of a consecutive sentence on one of the other felony counts. In addition, the Court conducted careful, competent, and thorough plea and sentencing hearings. It is thus apparent that petitioner's plea was a voluntary, intelligent, counseled plea of guilty in which petitioner admitted his factual guilt of one of the most serious of the six charged offenses and by so doing, resolved all of the charges against him and sparred himself from the possibility of receiving a consecutive sentence for a separate felony. Under these circumstances, petitioner's unsubstantiated claims that the proceedings were fundamentally unfair because of the concerted efforts of the prosecution, police and his

attorney are simply rendered irrelevant, since by his voluntary plea he has acknowledged his factual guilt of the offense charged. *Menna*, 423 U.S. at 61, n. 2, 96 S.Ct. 241.

The allocutions also demonstrate that the performance of petitioner's attorney unquestionably fell "within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (holding that in order to prevail on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy a two-prong test, in which he first must show that his attorney's performance was deficient in that it fell below an objective standard of reasonableness, and second, that the deficient performance prejudiced the defense, e.g., that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). The Court finds that petitioner was not denied effective assistance of counsel in the pre-plea-and-sentence stage of the proceedings.

Moreover, the state court which denied petitioner's § 440 motion in 1994 reviewed petitioner's allegations and submissions regarding the conduct of his attorney and the police and prosecution on that motion, and found that the "allegations are largely conclusory, self-serving and unsubstantiated by the documents submitted in support thereof" and that "no material facts in evidentiary form ... substantiate that the police or prosecution tampered with the evidence ...; nor ... that defendant was not effectively represented by counsel in reaching the advantageous plea agreement." Ex. P–2. This unrebutted determination must be presumed correct by this Court, 28 U.S.C. § 2254(e)(1). Furthermore, because that state court determination did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "a decision that was based on an unreason-

able determination of the facts in light of the evidence presented in the State court proceeding," *id.*, this Court may not grant a writ of habeas corpus with respect to the pre-plea claims presented therein.

Accordingly, the Court finds that petitioner is not entitled to habeas corpus relief on the grounds that his plea was involuntary, ineffective assistance of counsel before he entered his plea, or the denial of fundamental fairness in the proceedings.

## C. *The Failure to Appeal Claim*

■ Petitioner also claims that he was denied effective assistance of counsel in that his attorney allegedly misled him about his appeal rights and failed to file a timely notice of appeal.

> To prevail on [a] Sixth Amendment claim, [a] defendant must prove that counsel's representation 'fell below an objective standard of reasonableness' judged by "prevailing professional norms." He must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*United States v. Alli–Balogun*, 72 F.3d 9, 11 (2d Cir.1995) (per curiam) (citation omitted) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

Here, the exhibits show that on the day of sentencing, petitioner was presented by his attorney with a form Notice of Right to Appeal, which explained petitioner's appeal rights and gave him a choice between either having his attorney file a notice of appeal on his behalf or not by checking a box to the left of either the statement that declared that "I *want* to appeal" or the statement that declared that "I do not want to appeal." Petitioner checked the box to the left of the "I *do not want* to

appeal" statement, and he signed and dated the form. Ex. H–3. Subsequently, petitioner changed his mind about appealing, and through his mother, informed Horton shortly before the 30–day time for filing expired that he did want Horton to file a notice of appeal on his behalf. On October 3, 1991, Horton filed the notice of appeal and sent petitioner the forms necessary for filing his appeal *in forma pauperis*. Petitioner then did nothing to perfect his appeal for nearly two years. When petitioner did finally request an extension of time in which to file his appeal, his request was denied by the Appellate Division, not on the ground that the notice of appeal filed by attorney Horton was untimely, but on the ground that petitioner's request for an extension of time was made well beyond the one-year limit of N.Y. Criminal Procedure Law § 460.30 [12] for making such a request.

Given the foregoing, the Court finds that Horton's actions with respect to the filing of the notice of appeal did not fall below any objective standard of reasonableness judged by prevailing professional norms, as Strickland and its progeny require. It was not any failure of Horton's, but petitioner's own failure to follow through at any time within a year of the date on which the time in which to file the notice of appeal expired, N.Y. Criminal Procedure Law § 460.30, which led to the loss of petitioner's appeal rights.

Accordingly, the Court finds that petitioner is not entitled to habeas corpus relief based on the ground of ineffective assistance of trial counsel regarding his right to appeal.

### CONCLUSION

For the foregoing reasons, the petition for habeas corpus relief should be denied and the case should be dismissed.

12. See footnote 9, supra, for the relevant provisions of N.Y. Criminal Procedure Law

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72.3(a)(3).

The district court will ordinarily refuse to consider on de novo review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the petitioner and to the attorney for the respondent.

§ 460.30.

SO ORDERED.